**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **GENOVA BURNS LLC**<br>Angelo J. Genova, Esq.<br>Daniel M. Stolz, Esq.<br>Donald W. Clarke, Esq.<br>Matthew I.W. Baker, Esq.<br>agenova@genovaburns.com<br>dstolz@genovaburns.com<br>dclarke@genovaburns.com<br>mbaker@genovaburns.com<br>110 Allen Road, Suite 304<br>Basking Ridge, NJ  07920<br>Tel: (973) 467-2700<br>Fax: (973) 467-8126<br>*Local Counsel to the Official Committee of*<br>*Talc Claimants*<br>*Proposed Local Counsel to Official*<br>*Committee of Talc Claimants I* | **BROWN RUDNICK LLP**<br>David J. Molton, Esq.<br>Robert J. Stark, Esq.<br>Michael S. Winograd, Esq.<br>Jeffrey L. Jonas, Esq.<br>dmolton@brownrudnick.com<br>rstark@brownrudnick.com<br>mwinograd@brownrudnick.com<br>jjonas@brownrudnick.com<br>Seven Times Square<br>New York, NY  10036<br>Tel: (212) 209-4800<br>Fax: (212) 209-4801<br><br>and<br><br>Sunni P. Beville, Esq.<br>sbeville@brownrudnick.com<br>One Financial Center<br>Boston, MA  02111<br>Tel: (617) 856-8200<br>Fax: (617) 856-8201<br>*Co-Counsel for the Official Committee of*<br>*Talc Claimants*<br>*Proposed Co-Counsel for the Official*<br>*Committee of Talc Claimants I* |
| **BAILEY GLASSER LLP**<br>Brian A. Glasser, Esq.<br>Thomas B. Bennett, Esq.<br>bglasser@baileyglasser.com<br>tbennett@baileyglasser.com<br>105 Thomas Jefferson St. NW, Suite 540<br>Washington, DC  20007<br>Tel: (202) 463-2101<br>Fax: (202) 463-2103<br>*Co-Counsel for the Official Committee of*<br>*Talc Claimants*<br>*Proposed Co-Counsel for the Official*<br>*Committee of Talc Claimants II* | **OTTERBOURG P.C.**<br>Melanie L. Cyganowski, Esq.<br>Adam C. Silverstein, Esq.<br>Jennifer S. Feeney, Esq.<br>mcyganowski@otterbourg.com<br>asilverstein@otterbourg.com<br>jfeeney@otterbourg.com<br>230 Park Avenue<br>New York, NY  10169<br>Tel: (212) 905-3628<br>Fax: (212) 682-6104<br>*Co-Counsel for the Official Committee of*<br>*Talc Claimants*<br>*Proposed Co-Counsel for the Official*<br>*Committee of Talc Claimants I* |

i

| | |
|---|---|
| **PARKINS LEE & RUBIO LLP**<br>Leonard M. Parkins, Esq.<br>Charles M. Rubio, Esq.<br>lparkins@parkinslee.com<br>crubio@parkinslee.com<br>Pennzoil Place<br>700 Milan St., Suite 1300<br>Houston, TX  77002<br>Tel: (713) 715-1666<br>*Special Counsel to the Official Committee of Talc Claimants*<br>*Proposed Special Counsel to the Official Committee of Talc Claimants I* | **MASSEY & GAIL LLP**<br>Jonathan S. Massey, Esq.<br>jmassey@masseygail.com<br>100 Main Ave. SW, Suite 450<br>Washington, DC  20024<br>Tel: (202) 652-4511<br>Fax: (312) 379-0467<br>*Special Counsel for the Official Committee of Talc Claimants*<br>*Proposed Special Counsel to the Official Committee of Talc Claimants II* |

| | |
|---|---|
| In re:<br><br>**LTL MANAGEMENT, LLC,**<br><br>                        Debtor. | Chapter 11<br><br>Case No.:  21-30589 (MBK)<br><br>Honorable Michael B. Kaplan |
| **LTL MANAGEMENT LLC,**<br><br>                      Plaintiff,<br><br>    v.<br><br>**THOSE PARTIES LISTED ON APPENDIX A TO COMPLAINT and JOHN AND JANE DOES 1-1000,**<br><br>                      Defendants. | Adv. Pro. No. 21-03032 (MBK) |
| **LTL MANAGEMENT LLC,**<br><br>                      Plaintiff,<br><br>    v.<br><br>**THOSE PARTIES LISTED ON APPENDIX A TO COMPLAINT and JOHN AND JANE DOES 1-1000,** | Case No.:  21-20252 (FLW)<br><br>Honorable Freda L. Wolfson |

Defendants.

**JOINT REPLY MEMORANDUM OF LAW OF OFFICIAL COMMITTEES OF TALC CLAIMANTS I AND II IN FURTHER SUPPORT OF MOTION FOR WITHDRAWAL OF THE REFERENCE OF ADVERSARY PROCEEDING NO. 21-03032 (MBK)**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ........................................................................................................... 3

   A.   The Debtor's "Core Proceedings" Argument Misses the Point ................................. 3

   B.   The Debtor's Resort to the *Pruitt* Factors Also Fails ................................. 9

CONCLUSION ....................................................................................................... 12

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ackles v. A.H. Robins Co. (In re A.H. Robins Co.),*
59 B.R. 99 (Bankr. E.D. Va. 1986)....................................................................... 4, 7, 8

*Crown Heights Jewish Cmty. Council, Inc. v. Fischer (In re Fischer),*
202 B.R. 341 (E.D.N.Y. 1996) ................................................................................ 4

*FPSDA II, LLC v. Larin (In re FPSDA I, LLC),*
No. 12-08032, 2012 WL 6681794 (Bankr. E.D.N.Y. Dec. 21, 2012) ......................... 6

*Grant Thornton Int'l v. Parmalat Finanziaria S.p.A. (In re Parmalat Finanziaria),*
320 B.R. 46 (S.D.N.Y. 2005)............................................................................... 4, 6, 7

*Ifert v. Miller,*
Adv. No. 90-2371T, 1991 WL 60601 (E.D. Pa. April 12, 1991) ................................ 4

*In re Brier Creek Corp. Ctr. Assocs. Ltd.,*
486 B.R. 681 (Bankr. E.D.N.C. 2013) ..................................................................... 6

*In re Glob. Outreach, S.A.,* No. 09-15985 (DHS),
2009 WL 1606769 (Bankr. D.N.J. June 8, 2009) ...................................................... 6

*In re James,* 120 B.R. 802 (E.D. Pa. 1990)..................................................................... 5

*In re Motors Liquidation Co.,* 538 B.R. 656 (S.D.N.Y. 2015) ....................................... 4

*In re Nortel Networks Corp.,* 426 B.R. 84 (Bankr. D. Del. 2010)................................... 6

*In re Orion Pictures Corp.,* 4 F.3d 1095 (2d Cir. 1993).................................................. 5

*In re Pruitt,* 910 F.2d 1160 (3d Cir. 1990)....................................................................... 5

*In re Purdue Pharma, L.P.,*
No. 21 CV 7532 (CM), 2021 WL 5979108 (S.D.N.Y. Dec. 16, 2021) ...................... 8, 9

*In re UAL Corp.,*
No. 03 C 1072, 2003 WL 21181562 (N.D. Ill. Apr. 23, 2003).................................... 5

*In re Williams,* 474 B.R. 604 (Bankr. N.D. Ill. 2012).................................................... 6

*NDEP Corp. v. Handl-It, Inc. (In re NDEP Corp.),*
203 B.R. 905 (D. Del. 1996)...................................................................................... 4

*Official Committee of Unsecured Creditors v. Bisaria (In re Shubh Hotels Pittsburg, LLC),*
No. 10-26337-JAD, 2011 WL 7109364 (Bankr. W.D. Pa. May 16, 2011) ................. 6

*Pan Am Corp. v. Delta Air Lines, Inc. (In re Pan Am Corp.),*
163 B.R. 41 (S.D.N.Y. 1993)..................................................................................... 6

*Shalom Torah Ctrs. v. Phila Indem. Ins. Cos.,*
Civil Action No. 10-6766 (FLW), 2011 WL 1322295 (D.N.J. March 31, 2011).......... 5

*Shawmut Bank. Conn., Nat. Ass'n v. Lawrence*,
209 B.R. 588 (N.D.N.Y. 1997) ................................................................................ 5

*SIPC v. Bernard L. Madoff Inv. Secs. LLC*,
486 B.R. 579 (S.D.N.Y. 2013) ................................................................................ 6

*Stanziale v. Bear Stearns, Inc. (In re Dwek)*,
No. 09-4833, 2010 WL 2545174 (D.N.J. June 18, 2010) ...................................... 4

*United Sates v. ILCO, Inc.*, 48 B.R. 1016 (N.D. Ala. 1985) ...................................... 4

**Statutes**

28 U.S.C. § 1334 ...................................................................................................... 10

The Official Committee of Talc Claimants I and Official Committee of Talc Claimants II (collectively, the "**Committees**"), as successors to the Official Committee of Talc Claimants ("**Original Committee**"),[1] hereby jointly submit this Reply Memorandum of Law in further support of the Motion,[2] and in reply to the Debtor's objection to the Motion (the "**Objection**" or "**Obj.**") [Dist. Dkt. No. 14], and respectfully state as follows:

## PRELIMINARY STATEMENT

In its moving papers, the Original Committee showed that good cause exists for this Court to withdraw the reference with respect to the Adversary Proceeding, a discrete proceeding within the newly-filed Bankruptcy Case. In the Adversary Proceeding, the Debtor seeks, for the duration of the Bankruptcy Case, to stay and/or preliminarily enjoin the 35,000 talcum powder cases that this Court has been supervising in the MDL for the past five years, among other nation-wide talcum powder cases, against J&J and other defendants. As the Original Committee showed, all of the factors (*i.e.*, the *Pruitt* factors) that courts within this Circuit typically assess in determining whether to withdraw the reference – factors that largely address judicial economy and administrative expertise – militate in favor of withdrawal. After devoting years of resources to the matter, this Court has familiarity with the underlying claims (claims alleging cancer caused by the

---

[1]  On November 8, 2021, prior to the transfer of the case to this District, the North Carolina Bankruptcy Court entered an Order appointing the Original Committee [Dkt. No. 355]. On December 23, 2021, the Office of the United States Trustee filed Notices of Appointment of Official Committee of Talc Claimants I and Official Committee of Talc Claimants II [Dkt. No. 965], effectively splitting the membership of the Original Committee into two committees and adding additional members to each of the new committees. The Committees share a common interest with respect to the Motion and other matters, and have requested that counsel for the Original Committee, and collectively proposed counsel for the Committees, jointly file this Reply on behalf of both Committees.

[2]  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Memorandum of Law in Support of the Official Committee of Talc Claimants' Motion for Withdrawal of the Reference of Adversary Proceeding No. 21-03032 (MBK) [Adv. Pro. Dkt. No. 110-1] (the "**Memorandum of Law**").

manufacture, sale and/or marketing of J&J asbestos-containing talcum powder products) sought to be stayed in the Adversary Proceeding, as well as the impact of indefinitely staying such claims on the plaintiffs; by contrast, the Bankruptcy Court has *not* yet invested significant judicial resources in any progressed proceedings, and is *not* required to apply any unique bankruptcy expertise, in adjudicating the Adversary Proceeding.  Accordingly, factors of judicial economy and subject matter expertise weigh in favor of this Court, rather than the Bankruptcy Court, hearing the Adversary Proceeding.  (Mem. at 1-6, 11-17).[3]

In its Objection, the Debtor makes two principal arguments.  *First*, the Debtor argues that "the Adversary Proceeding is a core proceeding" that "involve[s] central bankruptcy issues best addressed by a bankruptcy court" and, "[f]or this reason alone, the Motion should be denied." (Obj. at 1).  *Second*, the Debtor asserts that the *Pruitt* factors weigh in favor of not withdrawing the reference, because "the Adversary Proceeding is about the application and scope of the *automatic stay* – quintessential bankruptcy issues" and because the "NJ Bankruptcy Court has indicated that it has already spent significant time familiarizing itself with the factual record and briefing developed in the Adversary Proceeding."  (*Id.* at 1-2 (emphasis in original)).  The Debtor overstates both of these arguments, neither of which has any merit.

The case law is clear that, contrary to the Debtor's position, the "core/non-core" distinction is *not* dispositive of whether the reference should be withdrawn.  Hence, even if the Adversary Proceeding were a core matter (which it is not), it would *not* necessitate denial of the Motion.  To the contrary, courts have withdrawn the reference regardless of the core/non-core distinction.  That should be the result here.  At its root, the question of whether to withdraw the reference is a practical inquiry grounded in concerns of judicial economy.  None of the factors, including

---

[3]  References to "Mem. at __" are to the Memorandum of Law, at the indicated page(s).

whether a matter is core, is to be mechanically applied.  Here, as measured by all relevant factors, judicial economy favors withdrawing the reference with respect to the Adversary Proceeding.

While the Debtor asserts that the Adversary Proceeding raises "quintessential bankruptcy issues" because the proceeding seeks an application of the Bankruptcy Code's automatic stay, the Debtor overlooks that extension of the automatic stay to the thousands of lawsuits against J&J and its commercial partners requires analysis of whether the "Debtor is the real party in interest" in the lawsuits by virtue of "contractual indemnities," shared "insurance coverage" and "tender agreements." (Obj. at 9-12).  The analysis of contractual indemnities, insurance coverage and tender agreements does not necessitate any bankruptcy expertise.  Rather, *this* Court, by virtue of its diversity jurisdiction in non-bankruptcy matters, has superior experience in analyzing, if and as needed, the various instruments on which the Debtor relies.

The Debtor further reads far too much into the Bankruptcy Court's remark that to understand "what's projected as being in the offing," it "had read through the transcripts" of prior proceedings during the case's brief stay in North Carolina.   Reviewing a handful of transcripts cannot compare to this Court's five years of experience in the MDL.  Additionally, the Debtor overlooks that, regardless of which way the Bankruptcy Court rules, its order almost certainly will be appealed to this Court.  Withdrawal of the reference, therefore, will sensibly put the stay question before this Court sooner rather than later.  The Motion should be granted.

## ARGUMENT

### A.  The Debtor's "Core Proceedings" Argument Misses the Point

The Debtor argues that "whether [a] proceeding is 'core' or 'non-core' to the pending bankruptcy case" is a "threshold factor" that must be decided *before* the Court considers any of the *Pruitt* factors.  (Obj. at 16).  According to the Debtor, "[c]ourts routinely have refused to withdraw the reference of matters . . . that are core proceedings," and "[p]roceedings to enforce or

extend the automatic stay, like this Adversary Proceeding, are quintessential core proceedings." (*Id.* at 17-19). The Debtor misstates the law, and, just as significantly, misses the point.

Contrary to the Debtor's position, whether a proceeding is core or non-core is *not* a gating issue on a motion to withdraw the reference. *See, e.g., Grant Thornton Int'l v. Parmalat Finanziaria S.p.A. (In re Parmalat Finanziaria)*, 320 B.R. 46, 50 (S.D.N.Y. 2005) ("While the question whether the proceeding sought to be withdrawn is core or non-core is significant, it is not dispositive." (citations omitted)).[4]

Rather, a core/non-core determination is, like the *Pruitt* factors, one of multiple proxies for determining the forum (district court versus bankruptcy court) in which a matter is most efficiently adjudicated. *See, e.g., NDEP Corp. v. Handl-It, Inc. (In re NDEP Corp.)*, 203 B.R. 905, 913 (D. Del. 1996) (noting that a court considers "whether withdrawal would service judicial economy, *such as*" the *Pruitt* factors).

To the extent courts have identified the distinction as being a "threshold" question, it is only because those courts have found the distinction to be a useful starting point for determining

---

[4] *See also see also Stanziale v. Bear Stearns, Inc. (In re Dwek)*, No. 09-4833, 2010 WL 2545174, at *4, 6 (D.N.J. June 18, 2010) (Wolfson, D.J.) (concluding that core/non-core determination is "threshold," but ultimately basing withdraw decision on consideration of the *Pruitt* factors); *In re Motors Liquidation Co.*, 538 B.R. 656, 663 (S.D.N.Y. 2015) (conclusion that matter was core "does not end the inquiry"); *Ackles v. A.H. Robins Co. (In re A.H. Robins Co.)*, 59 B.R. 99, 105-06 (Bankr. E.D. Va. 1986) (noting District Court's withdrawal of reference of multiple issues traditionally treated as part of Bankruptcy Court's "core" jurisdiction); *Crown Heights Jewish Cmty. Council, Inc. v. Fischer (In re Fischer)*, 202 B.R. 341, 354 (E.D.N.Y. 1996) (concluding that "totality of the circumstances militates strongly in favor of the withdrawal of this reference" despite matter being core); *Ifert v. Miller*, Adv. No. 90-2371T, 1991 WL 60601, at *3 (E.D. Pa. April 12, 1991) ("Furthermore, even if all of the plaintiffs' claims were core proceedings, this court could still withdraw its reference from the case. Section 157(d) does not mention the core/non-core distinction, and withdrawal of reference is not dependent on the classification of the claim."); *United Sates v. ILCO, Inc.*, 48 B.R. 1016, 1020 (N.D. Ala. 1985) ("The withdrawal provisions of § 157(d) make no distinction between core and non-core proceedings, and encompass proceedings that are core matters as well as those that are not core matters.").

where the efficiencies lie.  As the Second Circuit observed in *In re Orion Pictures Corp.*, a case

upon which the Debtor relies:

> A district court considering whether to withdraw the reference should first evaluate
> whether the claim is core or non-core, since it is upon this issue that questions of
> efficiency and uniformity will turn. For example, the fact that a bankruptcy court's
> determination on non-core matters is subject to *de novo* review by the district court
> could lead the latter to conclude that in a given case unnecessary costs could be
> avoided by a single proceeding in the district court. Conversely, hearing core
> matters in a district court could be an inefficient allocation of judicial resources
> given that the bankruptcy court generally will be more familiar with the facts and
> issues. Thus *once a district court makes the core/ non-core determination, it should
> weigh questions of efficient use of judicial resources, delay and costs to the parties,
> uniformity of bankruptcy administration, the prevention of forum shopping, and
> other related factors.*

*In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993) (emphasis added).  The other cases

cited by the Debtor do not reach a contrary result.[5]

Thus, even if the Court were to find the Adversary Proceeding were a "core" matter,[6] the

Court must still continue to analyze the *Pruitt* factors to determine whether permissive withdrawal

---

[5]  *See, e.g.*, *In re Pruitt*, 910 F.2d 1160, 1168 (3d Cir. 1990) (framing issue in terms of utilizing a
bankruptcy judges' "expertise"); *Shawmut Bank. Conn., Nat. Ass'n v. Lawrence*, 209 B.R. 588,
590 (N.D.N.Y. 1997) (same); *In re UAL Corp.*, No. 03 C 1072, 2003 WL 21181562, at *2 (N.D.
Ill. Apr. 23, 2003) (grounding its decision not to withdraw the reference on efficiency); *Shalom
Torah Ctrs. v. Phila Indem. Ins. Cos*., Civil Action No. 10-6766 (FLW), 2011 WL 1322295, at *2-
3 (D.N.J. March 31, 2011) (Wolfson, D.J.) (analyzing *Pruitt* efficiency factors after, and in view
of, core/non-core determination).

[6]  In fact the Debtor is wrong that the Adversary Proceeding is a core proceeding.  As set forth in
the Original Committee's opposition to the Debtor's motion to apply the automatic stay and/or for
a preliminary injunctive relief (which arguments are incorporated by reference herein), where, as
here, a debtor seeks to extend the benefit of the automatic stay to non-debtor third parties, the
analysis largely turns on whether and to what extent the claims the Debtor seeks to stay have an
impact on the Debtor's bankruptcy – in other words, whether there is "related to" (*i.e.*, "non-core")
jurisdiction over the non-debtor claims.  (*See* Adv. Pro. Dkt. No. 142-1 at pp. 77-80).  Hence, the
premise of the Debtor's argument – that the Motion should be denied because it seeks to withdraw
the reference as to a core proceeding – is flawed.

Indeed, the cases cited by the Debtor do not dictate a different conclusion.  Many of the
cases are factually or procedurally inapposite, having nothing to do with adversary proceedings
seeking to extend the stay to actions against non-debtors. *See, e.g.*, *In re James*, 120 B.R. 802, 805-
06 (E.D. Pa. 1990) (requesting enforcement stay with respect to forfeiture proceeding involving

is warranted – a point that the Debtor eventually acknowledges. (*See* Obj. at 22 (noting that after the core/non-core determination is made, the *Pruitt* factors are also considered by the courts)).  As set forth in the Motion and below, the *Pruitt* factors favor *this* Court – with its years of overseeing the MDL that the Adversary Proceeding seeks to stay or enjoin – adjudicating the Adversary Proceeding.  (*See* Mem. at 1-6, 10-17; *see infra* Part B).

That conclusion is consistent with decisions of other courts withdrawing the reference based on the efficiencies of doing so, notwithstanding the determination in those cases that the withdrawn proceeding was "core."[7]   *See, e.g.*, *Parmalat Finanziaria*, 320 B.R. at 50-51 (withdrawing the reference of core proceeding involving an order issued pursuant to § 304 of the Bankruptcy Code because of an "overriding consideration of judicial efficiency").

*Parmalat Finanziaria* is particularly instructive.  There, the bankruptcy court granted a request to stay all proceedings against a foreign debtor, essentially by preliminary injunction,

---

funds seized from the chapter 7 debtor); *In re Williams*, 474 B.R. 604, 606-07 (Bankr. N.D. Ill. 2012) (denying chapter 13 debtor's request to enforce stay solely under § 362(a)(3) based on conclusion that no estate property was involved in action against non-debtor); *Official Committee of Unsecured Creditors v. Bisaria (In re Shubh Hotels Pittsburg, LLC)*, No. 10-26337-JAD, 2011 WL 7109364, at *1 (Bankr. W.D. Pa. May 16, 2011) (involving alleged stay violation based solely on § 362(a)(3)); *In re Glob. Outreach, S.A.*, No. 09-15985 (DHS), 2009 WL 1606769, at *1, 5 (Bankr. D.N.J. June 8, 2009) (same); *In re Nortel Networks Corp.*, 426 B.R. 84, 86-90 (Bankr. D. Del. 2010) (involving actions against debtor entities that could have been commenced pre-petition).  Other cases, involving extension of the stay to actions against non-debtors, do not rely solely on "arising in" or "arising under" jurisdiction, but also conclude that the actions to be stayed satisfy the requirements of "related to" jurisdiction.  *See, e.g.*, *FPSDA II, LLC v. Larin (In re FPSDA I, LLC)*, No. 12-08032, 2012 WL 6681794, at *5 (Bankr. E.D.N.Y. Dec. 21, 2012) (relying on "arising under" and "related to"); *In re Brier Creek Corp. Ctr. Assocs. Ltd.*, 486 B.R. 681, 687 (Bankr. E.D.N.C. 2013) (granting a § 105 injunction against an arbitration proceeding that duplicated an adversary proceeding within the bankruptcy that "directly affects the administration of the bankruptcy proceedings and impedes on the court's ability to administer the estate.").

[7]  *See, e.g.*, *SIPC v. Bernard L. Madoff Inv. Secs. LLC*, 486 B.R. 579, 584-85 (S.D.N.Y. 2013) (withdrawal of a preliminary injunction proceeding justified on permissive grounds); *Pan Am Corp. v. Delta Air Lines, Inc. (In re Pan Am Corp.)*, 163 B.R. 41, 43-44 (S.D.N.Y. 1993) (reference was withdrawn for two consolidated adversary proceedings, despite both being core, as withdrawal promoted judicial efficiency).

pursuant to § 304 of the Bankruptcy Code.[8]  320 B.R. at 47-48.  In considering a motion to partially

withdraw the reference of the proceeding and modify the preliminary injunction order, the district

court noted that the § 304 proceeding was concededly core and further noted that while the

core/non-core determination is significant, it is not dispositive.  *Id.* at 50.  It nevertheless observed

that withdrawal of the reference was still proper if "essential to preserve a higher interest."  *Id.*

Notably, the district court to which the motion was directed had been presiding over a multi-district

litigation involving consolidated securities fraud claims asserted by investors against the foreign

debtors' directors, accountants, banks and lawyers.  *Id.* at 48.  Because of its experience with the

multi-district litigation, the district court withdrew the reference, reasoning:

> In this case, there is a higher interest, and that is an overriding consideration of
> judicial efficiency.  The undersigned has been charged by the Judicial Panel on
> Multidistrict Litigation with the orderly administration of the pretrial proceedings
> in the Securities Fraud Action and the Recovery Actions that are subject to federal
> jurisdiction.  That is a unique responsibility, and questions regarding the
> applicability of the Section 304 Order to discovery and counterclaims in those
> actions bear directly upon it.  *To direct such questions to the Bankruptcy Court in*
> *the first instance would be inefficient and counterproductive.*

*Id.* at 50-51 (emphasis added).

Just as in *Parmalat Finanziaria*, in view of the charge to this Court to oversee the

administration of pretrial proceedings in the MDL and of the Court's resulting substantial

involvement in the MDL, it would be "inefficient and counterproductive" to direct the Bankruptcy

Court to determine whether the Debtor is the "real party in interest" in the MDL (and other talcum

powder cases) such that the cases should be stayed and/or enjoined.

Also on point supporting withdrawal is *A.H. Robins*, 59 B.R. 99, a mass tort bankruptcy in

which the district court ordered a broad withdrawal of the reference.  In *Robins*, the district court

---

[8]  11 U.S.C. § 304 has since been repealed and replaced by Chapter 15 of the Bankruptcy Code
through the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

that had presided over a large group of Dalkon Shield cases against Robins, the mass tort litigation that the debtor filed bankruptcy purportedly to resolve, ordered the withdrawal of the reference of seventeen categories of proceedings and motions that the debtor alleged were unique to bankruptcy, including requests for relief under § 105 and to enforce the automatic stay under § 362(a) to the Dalkon Shield tort cases. *Id.* at 106. In light of the duration and breadth of the MDL, and the lack of any unique bankruptcy issues to be decided in the Adversary Proceeding, the reasons for withdrawing the reference here are even more compelling than in *Robins*.

Efficiency is particularly promoted here, given that any determination by the Bankruptcy Court on the extension of the automatic stay to, or whether to preliminarily enjoin, the MDL and thousands of other cases against J&J and other non-Debtor third parties will almost certainly be subject to an appeal before this court. Indeed, given the stakes to all sides from the determination of the Debtor's pending application in the Adversary Proceeding, it is reasonable to assume that the determination will be appealed to this Court – regardless of outcome. As such, efficiency weighs in favor of this Court determining the issue in the first instance, rather than on appeal.

The recent district court ruling in *Purdue Pharma* is an object lesson in the judicial economy and efficiencies to be gained by having the district hear important issues, such as the Adversary Proceeding, in the first instance. *See In re Purdue Pharma, L.P.*, No. 21 CV 7532 (CM), 2021 WL 5979108, at *1 (S.D.N.Y. Dec. 16, 2021). The issue decided in *Purdue Pharma*, whether the bankruptcy court has the authority to issue non-consensual third party releases, is closely related to the issue in this Adversary Proceeding – whether the automatic stay under § 362 or the Bankruptcy Court's equitable powers under § 105 can be used by the Debtor to stay litigation against hundreds of so-called "Protected Parties." In *Purdue Pharma*, after the parties spent years formulating and litigating the confirmation of the chapter 11 plan, confirmed by the bankruptcy

8

court, all of that work was undone when the district court ruled on appeal that there is no authority for the non-consensual third party releases.  *Id.* at *69.

Judge McMahon noted that the case would likely have proceeded in a different way had the parties known that non-consensual third-party releases were not authorized:

> It is indeed unfortunate that that this decision comes very late in a process that, from its earliest days in 2019, has proceeded on the assumption that releases of the sort contemplated in Section 10.7 of the Debtors' Plan would be authorized . . . . I am sure that the last few years would have proceeded in a very different way if the parties had thought otherwise.

*Id.* at *70.

The lesson of *Purdue Pharma* – which involved years of work, thousands of hours of court and lawyer time, and millions of dollars in fees – should be heeded here.   As in *Purdue*, this Court – the court designated by Congress to have original and exclusive jurisdiction of all cases under title 11, *see* 28 U.S.C. § 1334, and the court that would otherwise resolve these matters on appeal from the Bankruptcy Court – should rule on what the Debtor contends is a "critical" issue in the case (Obj. at 21), *i.e.*, whether stays or injunctions against non-Debtor "Protected Parties" should proceed for the duration of the Bankruptcy Case.

**B.  The Debtor's Resort to the *Pruitt* Factors Also Fails**

The Debtor also argues that the *Pruitt* factors – which it concedes are "grounded in the interests of judicial economy" – do not weigh in favor of withdrawal of the reference.  (Obj. at 22-26).  This argument, too, is wrong.

The Debtor principally argues that "the decision to extend the stay and issue an injunction in respect of the . . . Talc Claims" are "bankruptcy-related in nature" and "will affect the distribution to creditors within the proceeding."  (*Id.* at 23-24).  But the argument misses the mark. The Debtor asserts that, to determine whether the automatic stay applies, and/or an injunction should be granted, with respect to the Talc Claims, the court must determine whether the Debtor

is "the real party in interest" such that the "commencement or continuation of the . . . Talc Claims against the Protected Parties will liquidate and enable plaintiffs to obtain recoveries on claims against the Debtor." (Obj. at 11-12). *This* Court – which has been overseeing pre-trial matters with respect to 35,000 out of the 38,000 total "Talc Claims" – is in a position superior to the Bankruptcy Court to determine whether such claims against J&J and other defendants are, in reality, claims against the Debtor. Indeed, according to the Debtor, to make that determination, the court must analyze "contractual indemnities," shared "insurance coverage" and "tender agreements." (Obj. at 9-12).[9] There is *no* unique experience that the Bankruptcy Court has, and *no* experience superior to that of this Court, to perform such analyses.

The Debtor also asserts that the Bankruptcy Court "has already invested substantial time and resources in both the Adversary Proceeding and the Chapter 11 Case," having "held three hearings to date" and having "reviewed briefing materials related to the Adversary Proceeding and the Chapter 11 Case." (*Id.* at 22-23). The Debtor significantly overstates matters. In the Adversary Proceeding, the Bankruptcy Court merely endorsed a briefing schedule upon which the parties consensually agreed with respect to the preliminary injunction motion. It has heard no argument and decided no matters in the Adversary Proceeding. Moreover, the Bankruptcy Court's remark that it had "read through the transcripts" and, thus, understood "what's projected as being in the offing" clearly was intended to convey that the court had a general understanding of the prior proceedings in the case. Its review of "briefing materials" was *not* in relation to any issue in

---

[9] That is so, according to the Debtor, *regardless* of whether the stay of litigation against J&J and other "Protected Parties" is deemed to be (as the Debtor contends) an application of § 362(a)(1) "on its face" ("because those claims are the same claims, or essentially the same claims, that have been asserted against the Debtor") (Obj. at 1), or a resort to the court's equitable powers conferred by § 105(a) (Obj. at 21).

the Adversary Proceeding.[10]   Indeed, by any litmus test based on whether this Court or the Bankruptcy Court has conducted more proceedings or reviewed more materials relevant to the Adversary Proceeding, the Motion should be granted in view of this Court's administering, for pre-trial purposes, for the past five years the vast majority of the claims the Debtor now seeks to stay and/or enjoin.

Moreover, any suggestion that "expedition" compels that the Bankruptcy Court determine the matter, because the existing stop-gap preliminary injunction is set to expire on January 14, 2022 and the Bankruptcy Court already has scheduled a hearing date of January 11, 2022 (Obj. at 2), is erroneous.  The question of judicial economy at the root of the *Pruitt* factors is not to determine which court's calendar permits the matter to be heard first, but, rather, which court has more experience with the matter to decide it more efficiently and expertly.  Here, *this* Court has more experience with the underlying matters to be decided.  Hearing and deciding the preliminary injunction motion on or before January 14, 2022 is not critical.  As experience in this bankruptcy teaches, there is no harm, and certainly no irreparable harm, that will befall the Debtor during the relatively brief period that the Debtor's motion for preliminary injunction may be pending without a temporary restraint in place.  Indeed, there was a period of nearly a month before the Debtor obtained the requested preliminary injunction in favor of the "Protected Parties" from the North Carolina Court, and the Debtor's bankruptcy suffered no ill effects.

---

[10]  The Debtor's further suggestion that the Bankruptcy Court necessarily will have to devote time and resources to the issued raised in the Adversary Proceeding, because of supposed overlap between the Original Committee's Motion to Dismiss and this Adversary Proceeding (Obj. at 23), is meritless. While there may be some factual overlap between this Adversary Proceeding and the Motion to Dismiss, the issues to be analyzed are discrete – unlike in the Motion to Dismiss, the Debtor's position in the Adversary Proceeding depends on an analysis of the efficacy and impact, if any, of the various indemnity agreements and insurance policies.

Lastly, withdrawing the reference does not implicate any forum shopping concerns.  The Debtor (after forum shopping this bankruptcy case to North Carolina) now contends that the request to withdraw the reference is a form of forum shopping that *Pruitt* is intended to guard against.  (Obj. at 25).  But the preference for a court with superior background and experience with the issues at hand is not forum shopping. To the contrary, it is the very result that the *Pruitt* factors are designed to achieve.  As such, the label of forum shopping simply is misplaced.

## <u>CONCLUSION</u>

For the foregoing reasons, the Motion should be granted.

Respectfully submitted,

**GENOVA BURNS LLC**

Dated: December 27, 2021

By: */s/ Daniel M. Stolz*
Daniel M. Stolz, Esq.
Donald W. Clarke, Esq.
110 Allen Road, Suite 304
Basking Ridge, NJ 07920
Tel: 973-467-2700
Fax: 973-467-8126
Email:   dstolz@genovaburns.com
dclarke@genovaburns.com

*Local Counsel to the Official*
*Committee of Talc Claimants /*
*Proposed Local Counsel to the Official*
*Committee of Talc Claimants I*