UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LTL MANAGEMENT, LLC,<br><br>                            Plaintiff,<br><br>    v.<br><br>THOSE PARTIES LISTED ON APPENDIX A TO COMPLAINT and JOHN AND JANE DOES 1–1000,<br><br>                            Defendants. | Civ. Action No. 21-20252 (FLW)<br><br>**OPINION** |

**WOLFSON, Chief Judge:**

Before the Court is a Motion to Withdraw Reference (the "Motion") filed by Daniel M. Stolz, Esq., counsel for the Official Committee of Talc Claimants (the "Official Committee") in Adv. Pro. No. 21-03032 (MBK) (the "Adversary Proceeding"), pursuant to 28 U.S.C. § 157(d), Fed. R. Bankr. P. 5011, and L. Bankr. R. 5011-1. ECF No. 1. The debtor in the underlying bankruptcy proceeding, LTL Management, LLC (the "Debtor"), by and through its counsel Paul R. DeFilippo, Esq., opposes the Motion. ECF No. 14.[1] In light of various impending deadlines in the bankruptcy proceedings, on January 11, 2021, the Court issued an Order denying the Motion and notifying the parties that the Court would subsequently issue an Opinion. ECF No. 32. This Opinion sets forth the Court's reasoning for denying the Motion.

---

[1] After the Official Committee filed the present Motion, the Office of the United States Trustee filed Notices of Appointment of Official Committee of Talc Claimants I and Official Committee of Talc Claimants II, splitting the original committee into two. *See* ECF No. 22 at 7 n.1. The two committees filed a joint Reply to the Debtor's Opposition, *id.*, and references herein to the "Official Committee" encompass both committees appointed by the Trustee.

1

I.    BACKGROUND AND PROCEDURAL HISTORY

This case arises out of ongoing litigation against the Debtor's predecessor—Johnson & Johnson Consumer, Inc. ("Old JJCI")—alleging that certain baby products containing talcum ("talc") powder, which Old JJCI sold for a long period of time, cause various forms of cancer. A significant number of the cases in federal courts throughout the country were consolidated before me as a multi-district litigation (MDL).

In response to the mounting talc litigation in both federal and state jurisdictions, Old JJCI implemented a corporate restructuring, which was completed on October 12, 2021 (the "2021 Restructuring"). ECF No. 14-3, Declaration of Paul. R. DeFilippo ("DeFelippo Decl.") Ex. 2, Declaration of John K. Kim in Support of First Day Pleadings ("First Day Decl.") ¶ 16. As a result of the 2021 Restructuring, Old JJCI ceased to exist, and two new entities formed: "(a) the Debtor in this case, which was initially formed as a Texas limited liability company and then converted into a North Carolina limited liability company; and (b) another entity, which was initially formed as a Texas limited liability company and then merged into a New Jersey corporation that was its direct parent (as well as the direct parent of the Debtor), whereupon this entity changed its name to 'Johnson & Johnson Consumer Inc.'" ("New JJCI"). First Day Decl. ¶ 16. New JJCI is the direct parent of the Debtor, and Johnson & Johnson ("J&J") is the parent of New JJCI. *Id.* ¶¶ 2, 17. Under the terms of the 2021 Restructuring, the Debtor received certain of Old JJCI's assets and is "solely responsible for Old JJCI's liabilities arising from talc-related claims against it (other than claims for which the exclusive remedy is provided under a workers' compensation statute or similar laws)." *Id.* ¶¶ 16, 24.[2]

---

[2] Specifically, the Debtor assumed "all of Old JJCI's talc-related liability related in any way to injury or damage, or alleged injury or damage, sustained or incurred in the purchase or use of, or exposure to, talc, including talc contained in any product, or to the risk of, or responsibility for, any such damage or injury, except for any liabilities for which the exclusive remedy is provided under a workers' compensation statute or act ('Talc-Related Liabilities')." First Day Decl. ¶ 61.

New JJCI received all other assets of Old JJCI and is solely responsible for all other liabilities of Old JJCI. *Id.* ¶ 16.

On October 14, 2021, the Debtor filed for relief under chapter 11 (the "Chapter 11 Case") of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Western District of North Carolina (the "NC Bankruptcy Court"). Ch. 11 Case Dkt. No. 1. Four days later, the Debtor filed a motion requesting that the court enter interim and final orders applying an automatic stay pursuant to section 362(a) of the Bankruptcy Code to all talc-related claims against certain non-debtor affiliates, including J&J and New JJCI (the "Emergency Stay Motion"). Ch. 11 Case Dkt. No. 44. The NC Bankruptcy Court treated the Emergency Stay Motion as a request for a temporary restraining order (TRO), which the court denied, and the court instructed the Debtor to initiate an adversary proceeding and file a complaint seeking the relief requested in the Emergency Stay Motion. The Debtor then initiated the instant adversary proceeding ("Adversary Proceeding") on October 21, 2021, by filing a complaint (the "Complaint") requesting a declaration that the automatic stay pursuant to section 362(a) extends to all the Defendants' talc-related claims (the "Debtor Talc Claims")[3] against certain non-debtor affiliates, retailers, and insurance companies (the "Alleged Protected Parties"),[4] as well as a preliminary injunction pursuant to section 105(a) of

---

[3] The Complaint defines the Debtor Talc Claims as "any talc-related claim against the Debtor, including all claims relating in any way to talc or talc-containing materials that formerly were asserted against (or that could have been asserted against) Old JJCI on any theory of liability (whether direct, derivative, joint and several, successor liability, vicarious liability, fraudulent or voidable transfer or conveyance, alter ego or otherwise)." Adv. Pro. Dkt. No. 1 ¶ 2.

[4] The Complaint defines the Alleged Protected Parties as: Old JJCI; the Debtor's non-debtor affiliates set forth on Appendix B to the Complaint, which includes New JJCI; third party retailers who sold Old JJCI's talc-containing products and other third parties whom the Debtor has indemnified contractually; and insurance entities set forth on Appendix B to the Complaint, who have issued insurance policies to which the Debtor has access for coverage for talc-related liabilities. *See* Adv. Pro. Dkt. No. 1 ¶ 2.

3

the Bankruptcy Code and a TRO enjoining such actions. Adv. Pro. Dkt. No. 1. On the same day, the Debtor filed a motion seeking a declaration that the automatic stay under section 362 applies to the Alleged Protected Parties, as well as a preliminary injunction pursuant to section 105(a) enjoining actions against those parties (the "PI Motion"). Adv. Pro. Dkt. No. 2. The Debtor contends that the automatic stay extends to Debtor Talc Claims against the Alleged Protected Parties pursuant to sections 362(a)(1) and (3) because the Debtor is the real party in interest and certain such claims are the property of the Debtor. [5]

On November 10, 2021, the NC Bankruptcy Court issued oral findings of fact and conclusions of law pertaining to the PI Motion. The court concluded that it possessed jurisdiction over the PI Motion pursuant to 28 U.S.C. § 1334(b), under which "district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." *See* DeFilippo Decl. Ex. 7, Transcript of Ruling on PI Motion ("PI Tr.") 137:12–24 ("I think we have arising in, arising under, and related to jurisdiction at a bare minimum."). The court explained that the claims against the Alleged Protected Parties are "essentially[] claims against the [D]ebtor" and "would have a conceivable effect on the [Debtor's] estate." PI Tr. 137:12–19.[6] Further, the court made a "preliminary ruling" that the Debtor Talc Claims against the Alleged Protected Parties are automatically stayed. *Id.* 136:4–8. (finding the automatic "stay is in effect on the talc-based claims as against not just the [D]ebtor and as against Old JJCI, but also as against J&J, the

---

[5] The Adversary Proceeding consists of the Complaint and the PI Motion.

[6] In response to an objection that J&J is allegedly independently liable for Debtor Talc Claims that accrued after 1979, when J&J transferred the rights and liabilities associated with the relevant talc baby products to Old JJCI, the court concluded that "at the core," the claims are nevertheless "based upon products that either Old JJCI had assumed and agreed to indemnify its parent for or based on its products and conduct." *Id.* 139:1–17. Similarly, the court concluded that claims against retailers specified among the Alleged Protected Parties are effectively claims against the Debtor due to the Debtor's agreement to indemnify the retailers. *See id.* 140:18–141:2.

4

other [Alleged Protected Parties], including the retailers"). "[T]o remove all doubt," the court also issued a preliminary injunction pursuant to section 105(a) enjoining the Debtor Talc Claims against the Alleged Protected Parties. *Id.* 141:3–12.

With respect to the stay and the injunction, the NC Bankruptcy Court limited its ruling to sixty (60) days, *id.* 135:2–3, 142:18–19, setting an initial expiration date of January 14, 2022. The court explained that it limited the duration of the stay and injunction in order to avoid "bind[ing] the hands" of the court to which the NC Bankruptcy Court intended to transfer the Chapter 11 Case. *See id.* 135:22–25. And on November 16, 2021, the NC Bankruptcy Court transferred the Chapter 11 Case and the Adversary Proceeding to this Court, which referred the Chapter 11 Case and the Adversary Proceeding to the United States Bankruptcy Court for the District of New Jersey ("NJ Bankruptcy Court"). The Official Committee then filed the instant Motion here on November 29, 2021, ECF No. 1, and on January 15, 2022, the NJ Bankruptcy Court extended the automatic stay and injunction to February 28, 2022. Adv. Pro. Dkt. No. 157.

## II.  LEGAL STANDARD

United States district courts "have original and exclusive jurisdiction of all cases under title 11." 28 U.S.C. § 1334(a). In addition, "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). In exercising jurisdiction pursuant to section 1334, a "district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C. § 157(a). The District of New Jersey has "referred all proceedings arising under Title 11 to the bankruptcy court pursuant to a standing order of reference dated July 23, 1984." *Kohn v. Haymount Ltd. P'ship, LP (In re Int'l Bens. Grp., Inc.)*, Civ. No. 06-2363, 2006 WL 2417297, at *1 (D.N.J. Aug. 21, 2006).

Section 157 also authorizes district courts to withdraw a reference to a bankruptcy court in certain circumstances. "[A] district court must withdraw a reference . . . if the proceeding would require 'consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.'" *Stanziale v. Bear Stearns, Inc. (In re Dwek)*, Civ. No. 09-4833, 2010 WL 2545174, at *2 (D.N.J. June 18, 2010) (quoting 28 U.S.C. § 157(d)). Neither party contends that mandatory withdrawal is at issue, here. In addition, a district court "may withdraw" a reference "for cause shown." 28 U.S.C. § 157(d).

In assessing a motion to withdraw a reference "for cause," "'[w]hether the proceeding is "core" or "non core" to the pending bankruptcy case' is a threshold factor the [C]ourt must consider." *In re Dwek*, 2010 WL 2545174, at *4 (quoting *E. W. Trade Partners, Inc. v. Sobel WP, LLC (In re E.W. Trade Partners)*, Civ. No. 06-01812, 2007 WL 1213393, at *3 (D.N.J. Apr. 23, 2007) (citing *In re Orion Pictures Corp.*, 4 F.3d 1095, 1011 (2d Cir.1993))); *Calascibetta v. Pension Fin. Servs., Inc. (In re U.S. Mortg. Corp.)*, Civ. Nos. 11-07222, 11-07223, 2012 WL 1372284, at *2 (D.N.J. Apr. 19, 2012). A "'core' designation weighs heavily against withdrawing the reference due to the bankruptcy court's expertise in 'core' bankruptcy matters." *Karagjozi v. Bruck*, Civ. No. 17-6305, 2017 WL 4155104, at *3 (D.N.J. Sept. 20, 2017); *Pittsburgh Corning Corp. v. Mingo*, 277 B.R. 74, 78 (Bankr. W.D. Pa. 2002) (noting there is a "strong presumption against withdrawal of the reference" for "core" proceedings). However, the fact that a proceeding is "core" is "not dispositive," *Karagjozi*, 2017 WL 4155104, at *3, and the Court must also assess four factors the Third Circuit has identified as germane to withdrawal decisions. *See In re Dwek*, 2010 WL 2545174, at *4 (citing *In re Pruitt*, 910 F.2d 1160 (3d Cir.1990)). "These factors, grounded in the interests of judicial economy, address whether withdrawal would: (1) promote uniformity in bankruptcy administration; (2) reduce forum shopping and confusion; (3) foster the economical use of the debtors' and creditors' resources; and (4) expedite the bankruptcy process." *Id.* (citing *In re Pruitt*, 910 F.2d at 1168) (the

6

"*Pruitt* factors").

### III.     DISCUSSION

For the reasons discussed herein, the Adversary Proceeding is a "core" bankruptcy proceeding, creating a presumption against withdrawal, and the *Pruitt* factors do not override that presumption. Accordingly, withdrawal of the reference is not warranted.

#### A.     Core Proceeding

"To determine whether a proceeding is . . . 'core,'" the Court must first "consult [section] 157(b)," which provides a non-exclusive list of illustrative examples. *Halper v. Halper*, 164 F.3d 830, 836 (3d Cir.1999). "Second, the court must apply [the Third Circuit's] test for a 'core' proceeding," under which "'a proceeding is core [1] if it invokes a substantive right provided by title 11 or [2] if it is a proceeding, that by its nature, could arise only in the context of a bankruptcy case.'" *Halper*, 164 F.3d at 836 (quoting *In re Guild & Gallery Plus, Inc.*, 72 F.3d 1171, 1178 (3d Cir.1996)).

Here, the Adversary Proceeding is a "core" proceeding. The non-exclusive examples of "core" proceedings listed in section 157 include "motions to terminate, annul, or modify the automatic stay." 28 U.S.C. § 157(b)(2)(G). By extension, "motions to *enforce* the automatic stay are [also] core proceedings." *See In re James*, 120 B.R. 802, 809 (E.D. Pa. 1990), *rev'd on other grounds*, 940 F.2d 46 (3d Cir. 1991) (emphasis in original); *In re Healthcare Real Estate Partners, Inc.*, 941 F.3d 64, 70 (3d Cir. 2019) (noting that "a bankruptcy court [may] adjudicate" claims to enforce an automatic stay pursuant to "§ 362(k) . . . as 'core proceedings'").[7] And while the Third Circuit has not addressed this precise issue, other courts have concluded that motions to extend an automatic

---

[7] *See also In re Johnson*, 575 F.3d 1079, 1083 (10th Cir. 2009) ("A § 362(k)(1) proceeding . . . is a core proceeding because it 'derive[s] directly from the Bankruptcy Code and can be brought only in the context of a bankruptcy case.'") (quoting *MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 109 (2d Cir.2006)).

stay and injunction to non-debtor third parties pursuant to sections 362 and 105 qualify as "core" proceedings. *FPSDA II, LLC v. Larin (In re FPSDA I)*, No. 12-08032, 2012 WL 6681794, at \*\*1, 5 (Bankr. E.D.N.Y. Dec. 21, 2012) (finding "arising under" jurisdiction over motion to extend a section 362 automatic stay and issue a section 105 injunction covering claims against non-debtor third parties, which therefore qualified as a "core" proceeding); *In re Brier Creek Corp. Ctr. Assoc. Ltd. P'ship*, No. 12-01855, 2013 WL 144082, at \*1 (Bankr. E.D.N.C. Jan. 14, 2013) ("*In re Brier Creek Corp.*") ("A request for relief under 11 U.S.C. § 362(a)(1) to determine that the stay applies to non-debtors and a request for relief under 11 U.S.C. § 105 to extend the stay to non-debtors constitute core proceedings arising under title 11 for which this court has jurisdiction to hear and decide."). As the court explained in *In re James*, "[t]he automatic stay provision is central to the administration of bankruptcy suits as it represents 'one of the fundamental debtor protections provided by the bankruptcy laws.'" *Id.* (quoting H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 340 (1977)); *In re FPSDA I*, 2012 WL 6681794, at \*5 ("[S]ince the Bankruptcy Code both imposes the automatic stay and provides the [d]ebtor[] and the Court with the means to invoke it and to implement its protections, it is manifest that any proceeding to determine the scope and applicability of the automatic stay 'arises under' the Bankruptcy Code."). Because the Adversary Proceeding, which involves the issuance and extension of an automatic stay and injunction pursuant to sections 362 and 105, qualifies as a core bankruptcy proceeding, there is a "presumption against withdrawal of the reference." *Pittsburgh Corning Corp.*, 277 B.R. at 78; *Karagjozi*, 2017 WL 4155104, at \*3.[8]

---

[8] The Official Committee maintains that the Adversary Proceeding is not "core." ECF No. 22 at 11 n.6. In this regard, it contends that "related to" jurisdiction is the only basis for jurisdiction over claims against the non-debtor third parties, and claims subject only to "related to" jurisdiction constitute "non-core" proceedings. *See id.*; *see also Stoe v. Flaherty*, 436 F.3d 209, 217 (3d Cir. 2006) (citing *In re Combustion Engineering, Inc.*, 390 F.3d 190, 225 (3d Cir. 2004) ("*Combustion Engineering*") ("Cases under title 11, proceedings arising under title 11, and proceedings arising in a case under title 11 are referred to as 'core' proceedings; whereas proceedings 'related to' a case under title 11 are referred to as 'non-core' proceedings")). However, the Official Committee does

8

The Official Committee nonetheless suggests that "core" status is immaterial in these circumstances because certain claims "against the Alleged Protected Parties may be outside the scope of the bankruptcy court's authority." ECF No. 1 at 24. Whether a court may extend an automatic stay and injunction to claims against non-debtor third parties depends on whether the Debtor is "'the real party defendant [such that] . . . a judgment against the third-party defendant will in effect be a judgment . . . against the debtor,'" and also on whether "stay protection is essential to the debtor's efforts of reorganization." *McCartney v. Integra Nat. Bank North*, 106 F.3d 506, 510 (3d Cir. 1997) (quoting *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986)). The Official Committee contends that even if the Adversary Proceeding is "core," the possibility that claims against certain non-debtor third parties will fall outside the scope of the stay and injunction is reason to discount the importance of "core" status in deciding whether to withdraw the reference. *See* ECF No. 1 at 24. But that is not a sufficient basis upon which to decide the present Motion, as such a possibility is a common feature of motions to modify or extend an automatic stay.

To further support its position, the Official Committee cites to *In re Combustion Engineering, Inc.*, 390 F.3d 190 (3d Cir. 2004), which held that a district court had erred in extending a section 105 injunction to "independent non-derivative claims against non-debtor third parties." *Id.* at 236–37. After largely adopting a bankruptcy court's findings of fact and conclusions of law, the district court had confirmed a Chapter 11 reorganization plan, one component of which included an injunction channeling asbestos-related claims to a post-confirmation trust, which is available pursuant to section 524(g) of the Bankruptcy Code. *Id.* at 201–02, 213. However, recognizing that

---

not cite to any authority supporting the proposition that a motion seeking to extend an automatic stay and injunction to non-debtor third parties pursuant to sections 362 and 105 falls only within a court's "related to" jurisdiction and thereby constitutes a "non-core" proceeding. As discussed *supra*, I find persuasive the authorities which conclude such a proceeding is "core." *See, e.g.*, *In re FPSDA I*, 2012 WL 6681794, at *5; *In re Brier Creek Corp.*, 2013 WL 144082, at *1.

section 524(g) precluded the court from including independent, non-derivative claims against non-debtors in the channeling injunction, the bankruptcy court instead covered such claims under an injunction issued pursuant to section 105, and the district court adopted the bankruptcy court's approach. *Id.* at 210, 212–13. The Third Circuit reversed, holding that the court could not "rel[y] upon § 105(a) to achieve a result inconsistent with § 524(g)(4)(A)." *Id.* at 236–37.

This case is readily distinguishable. As a threshold matter, *Combustion Engineering* did not address a motion to withdraw a reference, and unlike *Combustion Engineering*, this case does not concern any limitations to a section 105 injunction that derive from section 524(g). More importantly, in *Combustion Engineering*, it was undisputed that the district court had issued a section 105 injunction covering "non-derivative third-party actions" that were not, in effect, claims against the debtor, and the Third Circuit vacated the district court's order on that basis. *See id.* at 235, 248. In contrast, here, whether claims against the non-debtor third parties are effectively claims against the Debtor is the precise issue a court still must decide before extending the automatic stay and injunction pursuant to sections 362 and 105. And as occurred in *Combustion Engineering*, the bankruptcy court is well-positioned to resolve that issue in the first instance. *See id.* at 210. As such, *Combustion Engineering* does not negate the presumption against withdrawal of the "core" bankruptcy proceeding at issue in this case.

    **B.**    ***Pruitt* Factors**

Neither do the *Pruitt* factors support withdrawal. First, the interest in "promoting uniformity in bankruptcy administration," *In re Pruitt*, 910 F.2d at 1168, favors denying the Motion. Where the claims at issue in an adversary proceeding "are purely bankruptcy-related in nature and the resolution of these claims will affect the distribution to creditors within the proceeding," interests in uniformity typically counsel against withdrawal. *See In re Winstar Comms, Inc.*, Civ. No. 01-01063, 2004 WL 2713101, at *4 (D. Del. Nov. 16, 2004). Here, for the reasons discussed *supra*, claims requesting an

10

extension of the automatic stay and injunction to all Alleged Protected Parties are "core" bankruptcy claims. Further, whether the automatic stay and injunction extend to claims against certain non-debtors could affect the distributions available to creditors. Contrary to the Official Committee's position, *In re U.S. Mortgage Corporation*, 2012 WL 1372284, at *3, does not favor withdrawal in these circumstances. There, the adversary proceedings "involved both core and non-core claims," including undisputedly non-core, state-law claims "for an accounting, civil conspiracy, aiding and abetting civil conspiracy and fraud, and conversion." *Id.* at *2. The court concluded that interests in uniformity favored withdrawal because it was "highly likely" that the same facts would be subject to different standards of review in addressing the core and non-core claims. *Id.* at *3. Because the claims at issue here are "core," there is no similar risk that different standards of review will apply.

Second, judicial economy and efficiency does not favor withdrawal. The NJ Bankruptcy Court has already held multiple hearings in this case and has gained familiarity with the Adversary Proceeding and the Motion to Dismiss the Chapter 11 Case. *See* DeFilippo Decl. Ex. 8, Status Conf. Tr. 21:23-33:6 (Nov. 22, 2021) ("I read through the [NC Bankruptcy Court] transcripts. I understand what's contemplated or what's projected as being in the offing as far as motions to dismiss and motions to withdraw the reference of adversary proceedings . . . ."). And the NC Bankruptcy Court had preliminarily determined—approximately one month after the Debtor filed the Chapter 11 Case—that the automatic stay and injunction extend to the Alleged Protected Parties.

The Official Committee maintains that judicial economy favors withdrawal because adjudicating the Adversary Proceeding "requires analysis of the underlying tort claims" to determine whether they are "direct, non-derivative claims, and whether continued litigation of such claims would adversely impact the Debtor's estate." ECF No. 1 at 19. An automatic stay generally extends to "nondebtor third parties" such as certain Alleged Protected Parties only "where 'there is such identity between the debtor and the third-party defendant that the debtor . . . [is] the real party

defendant and . . . a judgment against the third-party defendant will in effect be a judgment . . . against the debtor,'" or "where stay protection is essential to the debtor's efforts of reorganization." *McCartney*, 106 F.3d at 510 (quoting *A.H. Robins Co.*, 788 F.2d at 999). Adjudicating these issues will likely require a court to analyze "contractual indemnities," shared "insurance coverage" and "tender agreements" between the Debtor and other Alleged Protected Parties. *See* ECF No. 14 at 15–17; ECF No. 22 at 16. The Official Committee contends that "[t]his analysis does not require specialized bankruptcy knowledge," but rather "familiarity with the underlying claims," which this Court possesses based on its oversight of the MDL. *Id.* at 20. I disagree that the analysis at issue here favors withdrawal. Resolving the Adversary Proceeding will undoubtedly require some familiarity with the underlying claims. But ultimately—and more importantly—the Adversary Proceeding will require a court to determine whether the Debtor is the "real party defendant" in claims against non-debtor third parties, *McCartney*, 106 F.3d at 510, not whether a particular party is liable on any underlying substantive claim. That inquiry is integral to the scope of an automatic stay, *see id.*, which is a quintessential bankruptcy matter, *see, e.g.*, *In re James*, 120 B.R. at 809, and it is precisely the determination that the NC Bankruptcy Court made in issuing its preliminary ruling. *See* PI Tr. 137:12–19. Accordingly, this Court's experience overseeing the MDL does not create any efficiencies that outweigh the presumption against withdrawing a "core" bankruptcy proceeding. *Pittsburgh Corning Corp.*, 277 B.R. at 78.

Third, for reasons similar to those concerning judicial economy, neither would withdrawal "expedite the bankruptcy process." *In re Dwek*, 2010 WL 2545174, at *4. As emphasized *supra*, determining whether an automatic stay and injunction extend to certain non-debtor affiliates requires courts to apply fundamental principles of bankruptcy law. *See, e.g.*, *Maritime Elec. Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1203–05 (3d Cir. 1991) (discussing principles applicable to scope of automatic stay under section 362); *McCartney*, 106 F.3d at 510 (discussing principles governing

12

extension of automatic stay and injunction to non-debtor third parties). Bankruptcy courts apply these principles regularly, *see McCartney*, 106 F.3d at 510 (citing bankruptcy court decisions extending automatic stay to non-debtor third parties), and the NJ Bankruptcy Court is well-positioned to do so in this case. Although adjudicating the Adversary Proceeding will require some familiarity with the underlying Debtor Talc Claims, the NJ Bankruptcy Court has already begun—and will continue—to gain such familiarity in resolving the Motion to Dismiss. Moreover, the issues presented in this Adversary Proceeding and the Motion to Dismiss are intertwined, and the bankruptcy court should have an opportunity to resolve them in the first instance.

*SPIC v. Bernard L. Madoff Investment Securities, LLC*, 486 B.R. 579 (S.D.N.Y. 2012), on which the Official Committee relies, does not alter my conclusion. In *SPIC*, mandatory withdrawal applied to a motion to enforce an automatic stay and enjoin a preliminary class action settlement because resolving the motion would "require substantial and material consideration of federal law outside of the Bankruptcy Code." *Id.* at 583. In addition, the court concluded that permissive withdrawal also applied because the court was "intimately familiar with the nature of the [underlying substantive] claims and therefore [wa]s in the best position to analyze the . . . Stay Application." *Id.* at 584. Here, neither party claims that resolving the Adversary Proceeding requires application of federal law outside the Bankruptcy Code. Further, for the reasons discussed *supra*, this Court's familiarity with the underlying talc claims is not an adequate basis upon which to withdraw the reference in these circumstances.

Finally, the interest in "reduc[ing] forum shopping and confusion," *In re Dwek*, 2010 WL 2545174, at *4, counsels neither in favor nor against withdrawal. This *Pruitt* factor seeks to prevent parties from forum shopping out of a bankruptcy court. *See 400 Walnut Assocs., L.P., v. 4th Walnut Assocs., L.P.*, Civ. No. 14-145, 2015 WL 390455, at *4 (E.D. Pa. Jan. 28, 2015) (citing *In re Formica Corp.*, 305 B.R. 147, 151 (S.D.N.Y.2004) ("[C]ourts should employ withdrawal judiciously in order

13

to prevent it from becoming just another litigation tactic for parties eager to find a way out of bankruptcy court.")). Here, the NJ Bankruptcy Court has not issued a ruling adverse to the Official Committee, which courts have found may motivate forum shopping. *Cf. 400 Walnut Assocs., L.P.*, 2015 WL 390455, at *4 (finding forum shopping likely motivated motion to withdraw reference where a bankruptcy court had previously denied the movant's motion to dismiss). As the Debtor suggests, it is conceivable that the Official Committee believes it can secure a ruling from this Court in the Adversary Proceeding that would weaken the Debtor's Chapter 11 case. *See* ECF No. 14 at 32. But even assuming the Official Committee had no such intention, considering the other factors weighing against withdrawal, the absence of forum shopping would not alter my conclusion that withdrawal is inappropriate.[9]

## IV. CONCLUSION

For the reasons discussed herein, the Motion to Withdraw Reference is **DENIED**.

Date: January 21, 2022                                        /s/ Freda L. Wolfson
                                                              Hon. Freda L. Wolfson
                                                              U.S. Chief District Judge

---

[9] The Official Committee maintains that its Motion is timely pursuant to section 157, further supporting withdrawal. *See In re Schlein*, 188 B.R. 13, 14 (E.D. Pa. 1995) ("A § 157(d) motion is timely if it is filed at the first reasonable opportunity after the movant has notice of the grounds for removal, taking into consideration the circumstances of the proceeding."). However, the timeliness of the Motion does not outweigh the factors counseling against withdrawal discussed herein.